IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | | |
|---|---|---|
| GREAT RIVER ENTERTAINMENT, LLC, | * * * | 3:21-cv-00035 |
| Plaintiff, | * * | |
| v. | * * | |
| ZURICH AMERICAN INSURANCE CO., | * * | ORDER |
| Defendant. | * * | |

Before the Court is Defendant Zurich American Insurance Company's Motion to Dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 10. Plaintiff Great River Entertainment, LLC resists Defendant's Motion. ECF No. 11. Defendant filed a Reply. ECF No. 17. Both parties have filed supplemental notices with the Court. ECF Nos. 20, 21. Defendant requests oral argument on its Motion. ECF No. 10-1. However, the Court does not believe oral argument will substantially aid it in resolving the issues before the Court. Therefore, the matter is fully submitted.

I. FACTUAL AND PROCEDURAL BACKGROUND

In March 2020, the COVID-19 global pandemic forced state and local governments across the United States to impose restrictions on public access to restaurants and other non-essential businesses in an effort to slow the spread of the virus. *See* ECF No. 7 ¶¶ 57–61. Iowa Governor Kim Reynolds issued a "State of Emergency" declaration and stay-at-home order in March 2020 temporarily closing most non-essential businesses in Iowa to the public. *Id.* ¶ 59; ECF No. 10-1 at 2. Governor Reynolds's restrictions limited operations and consequently

hindered business operations, resulting in financial losses to businesses forced to temporarily close their doors or limit their capacity.  *See, e.g.*, ECF No. 7 ¶ 160.

Plaintiff is an Iowa limited liability company that owns, operates, and manages various entertainment businesses in Iowa, including: a casino, convention center, banquet operation, water park, arcade, bowling center, and several restaurants and hotels.  *Id.* ¶¶ 3, 4.  Plaintiff "derives the lion's share of its revenue from physical customer purchases and gaming." *Id.* ¶ 158.  When its facilities are closed, its revenues suffer.  *Id.*  Plaintiff's businesses are non-essential and were thus impacted by the temporary closure and limited operations under Governor Reynolds's emergency declaration.  *Id.* ¶¶ 58, 61, 160.  Upon resuming its business activities following the temporary closure, Plaintiff incurred extra costs in protecting the occupants of its buildings from COVID-19, including: "erecting barriers, altering air circulation, reconfiguring indoor spaces, disinfecting surfaces and materials, and providing [personal protective equipment] to employees." *Id.* ¶ 86.  Plaintiff required employees and guests to be temperature-checked, sanitized all areas of its facilities, inserted plexiglass barriers throughout its casino and restaurants, and removed seating in portions of its casino and restaurants for social-distancing.  *Id.* ¶ 159.  In addition, Plaintiff's businesses operated at a substantially reduced capacity.  *Id.* ¶ 160.  To control the spread of the virus, Plaintiff destroyed and disposed of contaminated property.  *Id.* ¶ 161.  Plaintiff undertook these and several other measures to protect its businesses from further loss or damage and to make its property safe and suitable for use during the pandemic.  *Id.* ¶ 97.

Defendant is an Illinois-based insurance company licensed to sell commercial property and casualty insurance in Iowa.  *Id.* ¶ 6.  Defendant sold a Zurich EDGE property-casualty and

business-interruption insurance policy to Plaintiff. *Id.* ¶¶ 5–7; ECF No. 7-1. Plaintiff's coverage under Defendant's policy started in December 2019 and ended in December 2020. *Id.* at 10.

Defendant's EDGE insurance policy covers actual "Time Element loss," also known as business-interruption loss, and loss of business income resulting from the "necessary [s]uspension of [Plaintiff's] business activities." *Id.* at 22. A suspension is defined in the policy as "[t]he slowdown or cessation of [Plaintiff]'s business activities" due to a covered cause of loss. *Id.* at 61. The policy defines a covered cause of loss as "[a]ll risks of direct physical loss of or damage from any cause unless excluded." *Id.* at 18. Coverage for loss extends to gross earnings, or "the actual loss sustained," and the "value that would have been earned during the Period of Liability." *Id.* at 22–23. In addition, the policy covers any "reasonable and necessary expenses incurred . . . to reduce the amount of Gross Earnings loss," *id.* at 23, plus any extra expenses incurred "to resume and continue as nearly as practicable the [Plaintiff]'s normal business activities," *id.* at 24. Plaintiff can recover for business-interruption loss only to the extent its business properties are "unable to make up lost production" during the suspension, "unable to continue such operations or services," and "able to demonstrate a loss of revenue" caused by a "direct physical loss of or damage" to Plaintiff's business properties. *Id.* at 22.

Special coverage also exists under the policy. Coverage exists if a business-interruption loss results from an order of civil or military authority "that prohibits access" to Plaintiff's businesses. ECF No. 7-1 at 28–29. Such a loss must be a "response to direct physical loss of or damage caused by a Covered Cause of Loss to property." *Id.* In addition, the policy will cover "direct physical loss of or damage caused by a Covered Cause of Loss" if enforcement of a law or ordinance increases Plaintiff's costs for decontamination of its properties. *Id.* at 31. The

3

decontamination must be "due to the actual not suspected presence of Contaminant(s) as a result of direct physical loss or damage." *Id.*

There are, however, relevant policy exclusions and endorsements that modify the scope of Plaintiff's coverage. *Id.* at 25. For starters, coverage for business-interruption loss does not extend to "any reason other than physical loss or damage." *Id.* at 19. The policy also excludes coverage for general "loss of use" as well as non-physical "[l]oss or damage arising from the enforcement of any law, ordinance, regulation or rule regulating or restricting . . . occupancy, operation or other use . . . of any property." ECF No. 7-1 at 19. In addition, there is a contamination exclusion. Contamination is defined in the policy as the presence of a "pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent" on Plaintiff's property. *Id.* at 56. In other words, virus-related contamination costs are not covered unless resulting from direct physical loss or damage. *Id.* at 19. The contamination exclusion extends to "the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy." *Id.*

Plaintiff submitted a claim to Defendant under its business-interruption insurance policy and the civil or military authority coverage provision seeking compensation for loss of revenue, damage to its business properties, the inability to use its properties during the temporary government shutdown and stay-at-home order, decontamination costs, and extra expenses incurred in resuming its business operations as near to normal as possible during the COVID-19 pandemic. ECF No. 7 ¶¶ 159–163. Defendant denied coverage asserting "the Policy does not provide coverage for the loss of revenue associated with the civil authority closure" caused by the pandemic. ECF No. 7-2 at 1. According to Defendant, COVID-19 is not a covered cause of loss for the civil authority provision to apply. *Id.* at 3. Likewise, Plaintiff's business-

interruption claim was denied because "there does not appear to be any claim for direct physical loss of or damage to property at an Insured Location." *Id.* at 2.  Defendant determined that business-interruption and loss caused by the virus that causes COVID-19 cannot be considered a "direct physical loss of or damage to property," and in any case, the contamination and loss of use exclusions excluded coverage for Plaintiff's loss caused by the virus. *Id.* at 3–4.

Defendant's denial prompted Plaintiff to file this lawsuit in state court on March 10, 2021, seeking a declaratory judgment finding coverage for its claims (Count One).  ECF No. 1-2 at 10–11.  Plaintiff also seeks damages for breach of contract (Count Two). *Id.* at 12–13. Plaintiff bases its claims on the statement that the virus that causes COVID-19 cannot be removed or eliminated by routine cleaning.  ECF No. 7 ¶¶ 47–48.  Plaintiff also claims it is virtually certain, based on scientific evidence, that COVID-19 is present on its property and that its employees and customers have contracted COVID-19. *Id.* ¶¶ 50–51.  In fact, fifty of Plaintiff's employees have contracted the virus. *Id.* ¶ 55.  Plaintiff thus argues COVID-19 has caused and continues to cause direct physical loss of or damage to its property resulting in business-income loss covered under the policy.  Further, Plaintiff argues Governor Reynolds's March 2020 shutdown and stay-at-home order caused loss insured under Defendant's civil authority coverage.  Plaintiff claims it reasonably expected that Defendant's policy would otherwise insure against loss arising out of the pandemic and Governor Reynolds's civil orders.

On April 16, Defendant removed the case to this Court.  ECF No. 1.  Defendant now moves to dismiss Plaintiff's claims with prejudice pursuant to Rule 12(b)(6) for failure to state a claim.  ECF No. 10.

II.  STANDARD OF REVIEW

"Under [Rule] 12(b)(6), the factual allegations in the complaint are accepted as true and viewed most favorably to the plaintiff." *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).  In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a claim is plausible is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Hamilton v. Palm*, 621 F.3d 816, 817–18 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  A reasonable inference is "more than a sheer possibility that a defendant acted unlawfully." *Id.*

### III. ANALYSIS

#### A. Choice of Law

In cases based on diversity, the Court "appl[ies] the choice-of-law rules of the forum state." *John T. Jones Constr. Co. v. Hoot Gen. Constr. Co.*, 613 F.3d 778, 782 (8th Cir. 2010); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941).  Thus, the Court applies Iowa's choice-of-law rules.  Under Iowa choice-of-law rules, the Court must determine the applicable law "by the intent of the parties or the most significant relationship test." *Gabe's Constr. Co. v. United Capitol Ins. Co.*, 539 N.W.2d 144, 146 (Iowa 1995); *see also Cole v. State Auto. & Cas. Underwriters*, 296 N.W.2d 779, 781 (Iowa 1980) (adopting the Restatement (Second)'s most-significant-relationship test).  Section 188(2) of the Restatement (Second) of Conflict of Laws (Am. Law Inst. 1971), lists factors to be considered in applying the most-significant-relationship test.  These factors include: (1) "the place of contracting"; (2) "the place

of negotiation of the contract"; (3) "the place of performance"; (4) the location of the subject matter of the contract"; and (5) "the domicile, residence, nationality, place of incorporation and place of business of the parties." *Gabe's Constr. Co.*, 539 at 146 (quoting § 188(2)). These factors must "be evaluated according to their relative importance with respect to the particular issue." *Id.* (quoting § 188(2)). The Restatement provides further guidance in cases involving liability insurance: Courts should apply "the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy." Restatement (Second) of Conflict of Laws § 193.

Here, the parties do not dispute that Iowa law applies to the interpretation of the policy at issue.

### B.  Defendant's Motion to Dismiss

"Under Iowa law, the intent of the parties, as determined by the language of the policy, controls the court's interpretation of an insurance policy." *Liberty Mut. Ins. Co. v. Pella Corp.*, 650 F.3d 1161, 1169 (8th Cir. 2011). "Generally speaking, the plain meaning of the insurance contract prevails." *T.H.E. Ins. Co. v. Estate of Booher*, 944 N.W.2d 655, 662 (Iowa 2020). Interpreting an insurance policy is a legal question to be decided by the courts. *City of W. Liberty v. Emps. Mut. Cas. Co.*, 922 N.W.2d 876, 879 (Iowa 2019). Courts must "avoid straining the words and phrases of the policy 'to impose liability that was not intended and was not purchased.'" *Cairns v. Grinnell Mut. Reinsurance Co.*, 398 N.W.2d 821, 824 (Iowa 1987) (citation omitted). Iowa courts "have consistently required that the party claiming entitlement to coverage under the [insurance] policy" carries the burden to "prove compliance with its terms." *Am. Guarantee & Liab. Ins. Co. v. Chandler Mfg. Co.*, 467 N.W.2d 226, 228 (Iowa 1991).

Here, the policy at issue states,

> The [Defendant] will pay for the actual Time Element loss the [Plaintiff] sustains, as provided in the Time Element Coverages, during the Period of Liability. The Time Element loss must result from the necessary Suspension of the [Plaintiff]'s business activities at an Insured Location. The Suspension must be due to direct physical loss of or damage to Property (of the type insurable under this Policy other than Finished Stock) caused by a Covered Cause of Loss at the Location.

ECF No. 7-1 at 22. Coverage for "Time-Element loss" or business-interruption extends to "reasonable and necessary Extra Expenses incurred by the [Plaintiff]" in resuming "normal business activities that otherwise would be necessarily suspended." *Id.* at 24. The policy breaks down "Time Element loss" into "Gross Earnings loss [or] the actual loss sustained by the [Plaintiff] during the Period of Liability." *Id.* A suspension is defined as "[t]he slowdown or cessation of [Plaintiff]'s business activities" due to a covered cause of loss. *Id.* at 61. A covered cause of loss is "[a]ll risks of direct physical loss of or damage from any cause unless excluded." *Id.* at 56. The phrase "direct physical loss of or damage to property" is not defined in the policy, nor are any of the individual terms within that phrase.

The policy also includes special coverage for loss caused by civil or military authority orders:

> The [Defendant] will pay for the actual Time Element loss sustained by the [Plaintiff], as provided by this Policy, resulting from the necessary Suspension of the [Plaintiff]'s business activities at an Insured Location if the Suspension is caused by order of civil or military authority that prohibits access to the Location. That order must result from a civil authority's response to direct physical loss of or damage caused by a Covered Cause of Loss.

*Id.* at 28.

In *Oral Surgeons, P.C. v. Cincinnati Insurance Co.*, the Eighth Circuit found that similar language did not result in coverage for business income lost as a result of the Iowa Governor's restrictions during the COVID-19 pandemic. 2 F.4th 1141, 1145 (8th Cir. 2021). There, the court noted that the policy language "clearly requires direct 'physical loss' or 'physical damage'

8

to trigger business interruption and extra expense coverage." *Id.* at 1144.  The court thus found, "there must be some physicality to the loss or damage of property—*e.g.*, a physical alteration, physical contamination, or physical destruction." *Id.*  The court observed, "[t]he policy cannot reasonably be interpreted to cover mere loss of use when the insured's property has suffered no physical loss or damage." *Id.*  Further, "[t]he unambiguous requirement that the loss or damage be physical in nature" was consistent "with the policy's coverage of lost business income and incurred extra expense during the 'period of restoration.'" *Id.*  The court observed that, "[p]roperty that has suffered physical loss or physical damage requires restoration.  That the policy provides coverage until property 'should be repaired, rebuilt or replaced' or until business resumes elsewhere assumes physical alteration of the property, not mere loss of use." *Id.*  Ultimately, the court concluded, "[t]he policy clearly does not provide coverage for Oral Surgeon's partial loss of use of its offices, absent a showing of direct physical loss or physical damage." *Id.* at 1145.

    This analysis is binding here.  The policy language is unambiguous, thus the Court gives the language a plain and ordinary meaning.  Under a plain and ordinary meaning analysis of the phrase "direct physical loss of or damage to Property," coverage is not extended to purely economic loss caused by or resulting from COVID-related government shutdown orders.  Although Plaintiff alleges the government-imposed restrictions rendered its business properties temporarily unusable, and that upon re-opening it was required to add personal protective equipment, erect plexiglass barriers, alter air circulation, and make physical reconfigurations to indoor seating in its casino and restaurants, none of these physical alterations can be said to be "physical loss or physical damage requir[ing] restoration." *Oral Surgeons*, P.C., 2 F.4th at 1144; *see also TP Racing LLLP v. Am. Home Assurance Co.*, No. CV-21-00118-PHX-SRB, 2021 WL

4851430, at *4 (D. Ariz. Oct. 13, 2021) ("While TP Racing did alter its property—e.g., by installing plexiglass barriers to contain the spread of the COVID-19 virus—a commonsense interpretation of 'alteration' does not equate to physical loss or damage, nor do TP Racing's alterations to its business evidence physical loss or damage."); *Byberry Servs. & Sols., LLC v. Mt. Hawley Ins. Co.*, No. 20-cv-03379, 2021 WL 3033612, at *4 (N.D. Ill. July 19, 2021) (noting that, although "the plaintiffs did physically alter their property in response to the [government shutdown] orders—installing plexiglass among other changes—such measures do not qualify as a physical loss"). Nothing occurred that required the property to "be repaired, rebuilt or replaced" before business could resume. *Oral Surgeons*, P.C., 2 F.4th at 1144. Further, the speculative presence of COVID-19 at Plaintiff's properties, regardless of the scientific evidence pertaining to the spread of the virus indoors, does not appear to cause physical, non-economic loss or damage. *See Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697, at *2 (11th Cir. Aug. 31, 2021) ("[W]e do not see how the presence of [viral] particles would cause physical damage or loss to the property."). Thus, the loss Plaintiff complains of was a mere loss of use, which is not covered by the policy's business-interruption or civil authority provisions.

 Because there is no coverage for Plaintiff's business-interruption and civil authority claim, Plaintiff cannot state a claim for breach of contract and its breach-of-contract claim is likewise dismissed. *See Lisette Enters., Ltd. v. Regent Ins. Co.*, ___ F. Supp. 3d ___, ___, No. 4:20-cv-00299, 2021 WL 1804618, at *8 (S.D. Iowa May 6, 2021), *appeal docketed*, No. 21-2238 (8th Cir. June 4, 2021). The Court need not address the arguments relating to applicable policy exclusions because it concludes no coverage exists under the policy.

 Accordingly, Plaintiff's claims are dismissed.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motions to Dismiss (ECF No. 10) is GRANTED. The case is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated this 15th day of November, 2021.

ROBERT W. PRATT, Judge
U.S. DISTRICT COURT